## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 04 2020, 9:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Samtwan Hobby, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 4, 2020 <br><br> Court of Appeals Case No. <br> 19A-CR-765 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Richard Hagenmaier, Commissioner <br><br> Trial Court Cause No. <br> 49G21-1709-F4-33069 |

**May, Judge.**

[1] Samtwan Hobby appeals his convictions for one count of Level 4 felony dealing in cocaine[1] and two counts of Level 5 felony dealing in cocaine.[2] He raises one issue on appeal, which we restate as whether the trial court abused its discretion when it limited the questions Hobby could ask witnesses regarding a corrective action request and a forensic scientist's resignation from the Indianapolis-Marion County Forensic Services Agency ("Crime Lab"). We affirm.

## Facts and Procedural History

[2] In the summer of 2017, Todd Bevington, a special agent with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), was assigned to the Indianapolis field office. The Indianapolis Metropolitan Police Department ("IMPD") asked Special Agent Bevington to assist them in a drug investigation. The IMPD wished to have a confidential informant conduct controlled buys of narcotics. However, the IMPD did not wish to use a local informant because of concern that the informant's safety would be jeopardized. Bevington introduced the IMPD to R.E.,[3] an informant from Virginia he had used in the past.

---

[1] Ind. Code § 35-48-4-1(c).

[2] Ind. Code § 35-48-4-1(a).

[3] We refer to the confidential informant by her initials because the State indicated at trial that she could potentially be called as a witness in approximately ten open federal cases.

[3]     R.E. traveled to Indianapolis and participated in three controlled buy operations where Hobby was the target. The first occurred on August 3, 2017, the second on August 9, 2017, and the third on August 11, 2017. Each controlled buy followed the same procedure. Before the buy, IMPD Sergeant Gregory Kessie would search R.E. and her car to make sure R.E. did not have any illegal drugs in her possession. Sergeant Kessie would then give R.E. marked bills to use when she purchased narcotics. Sergeant Kessie also equipped R.E. with a recording device prior to each buy, and officers surveilled Hobby's house during each buy. R.E. would drive to Hobby's house. She would go inside Hobby's house and purchase cocaine from Hobby. After each buy, R.E. would meet with Sergeant Kessie at a predetermined location, and she would turn over the drugs to him. He would also search her and her vehicle again. Sergeant Kessie would photograph the drugs and store them in heat-sealed plastic envelopes until the Crime Lab took possession of them. Forensic scientists at the Crime Lab tested the items, and their tests confirmed the substances were cocaine.

[4]     Police officers arrested Hobby on August 14, 2017. The State charged Hobby with one count of Level 4 felony dealing in cocaine, three counts of Level 5 felony dealing in cocaine, three counts of Level 6 felony possession of cocaine,[4]

---

[4] Ind. Code § 35-48-4-6.

and one count of Class B misdemeanor possession of marijuana.[5]  The State also alleged Hobby was eligible for an habitual offender enhancement.[6]

[5] In discovery, the State produced a corrective action request ("CAR") dated November 2, 2017.  The CAR stated that Matthew Whitt, a forensic scientist in the Crime Lab, routinely failed to follow proper procedures when he analyzed blood alcohol content samples.  He adjusted an external control value by using a technique outside of the lab's standard operating procedure and he did not document doing so in his lab reports.  Whitt resigned from his position with the Crime Lab shortly before the CAR was issued.  Whitt was also the forensic scientist who originally tested and confirmed that the substance R.E. bought in the second controlled buy was cocaine.  On February 14, 2019, Ryan Farrell, another forensic scientist at the Crime Lab, retested the substance originally tested by Whitt.  The retest indicated that the substance was cocaine.

[6] Prior to trial, the State filed a motion in limine asking the court to prohibit Hobby from asking any questions regarding the details of Whitt's employment with the Crime Lab and questions about the CAR.  The trial court denied the State's motion stating, "I'm gonna allow the defense to inquire about [the CAR].  If the [forensic scientists] don't know about it, then they can just say I don't know." (Tr. Vol. II at 37.)  The court held a jury trial on February 21 and

[5] Ind. Code § 35-48-4-11.

[6] Ind. Code § 35-50-2-8.

22, 2019.  Prior to trial, the State dismissed the three possession of cocaine charges, one of the Level 5 dealing in cocaine charges, and the Class B misdemeanor possession of marijuana charge.

[7]     During trial, forensic scientist Dustin Crawford testified that the Crime Lab utilized a peer review process whereby a forensic scientist's work was reviewed and approved by another chemist before a formal report was generated.  On cross-examination, Hobby began to reference the CAR, and the State objected. The court held a sidebar conference.  At the conclusion of the conference, the court stated, "Well, since it's only an allegation (indiscernible) I'm going to limine that out.  So, I don't want that brought into this case."  (*Id.* at 231.) Hobby then requested to make an offer of proof outside the presence of the jury. During the offer of proof, Crawford testified that he was aware Whitt resigned, but he was not aware of the specifics surrounding his resignation.

[8]     Hobby then attempted to ask Crawford questions regarding the CAR, but Crawford indicated that he was not familiar with the CAR.  The court designated the CAR as Court's Exhibit A and explained to the parties that the jury would not be able to view the document:

> I am ruling right now that, uh, this witness has no personal knowledge of this from the, uh, Court's Exhibit A . . . it does appear that this involved, uh, blood alcohol content and, uh, I just think it's too remote.  If you continue to question him and get, uh, I don't know, answers and I'm not sure then you're interjecting prejudicial evidence, uh, into the record through . . . your own questions.  That is my ruling.

(*Id*. at 239.) The court further stated, "And my ruling right now is that you're—as far as this witness you're, uh, this line of questioning is not going to be allowed. It's not relevant, it's prejudicial (indiscernible)." (*Id*. at 240.) The jury returned to the courtroom, and Hobby's trial resumed.

[9] After Crawford finished testifying, Ryan Farrell testified that the substance R.E. bought in the second controlled buy was originally tested by another forensic scientist, and the forensic scientist who originally tested the substance no longer worked at the Crime Lab. Hobby then asked if the forensic scientist who originally tested the substance "resigned under suspicion[.]" (Tr. Vol. III at 2.) The State objected, and the trial court sustained the State's objection.

[10] The jury returned verdicts of guilty on the remaining charges against Hobby. Hobby admitted that he qualified for the habitual offender enhancement. The court imposed an enhanced sixteen-year sentence for the Level 4 felony dealing in cocaine conviction, with eight years ordered to be served in the Indiana Department of Correction, two years to be served in Community Corrections, and six years suspended. The court also imposed six-year sentences for each of the Level 5 felony dealing in cocaine convictions. The trial court ordered the sentences to be served concurrently.

# Discussion and Decision

[11] Hobby argues the trial court abused its discretion by limiting his questioning of Crawford and Farrell about Whitt and the CAR. Hobby contends he should

have been allowed to question the Crime Lab scientists about those topics because "a chemist who would alter data and work outside of established protocol on one type of testing could do the same on any category of analysis." (Appellant's Br. at 13-14.) Further, Hobby argues such questioning would have cast doubt on the effectiveness of the peer review process because the peer review process did not timely catch Whitt's errors.

[12] We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Blankenship v. State*, 5 N.E.3d 779, 782 (Ind. Ct. App. 2014). "A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court." *Id*. A criminal defendant enjoys "the right to ask pointed and relevant questions in an attempt to undermine the opposition's case, as well as the opportunity to test a witness' memory, perception, and truthfulness." *Howard v. State*, 853 N.E.2d 461, 465 (Ind. 2006). Nonetheless, "[t]he trial judge has discretion to determine the scope of cross-examination and only a clear abuse of that discretion warrants reversal." *Carter v. State*, 505 N.E.2d 798, 800 (Ind. 1987).

[13] The State argues the trial court properly curtailed Hobby's cross-examination related to Whitt and the CAR because such questions were not relevant and were unfairly prejudicial. As we have explained before:

> Evidence is relevant when it has any tendency to prove or disprove a consequential fact. This liberal standard for relevancy sets a low bar. The trial court enjoys wide discretion in deciding whether that bar is cleared. Relevant evidence is admissible unless any applicable rule or statute provides otherwise.

*Poortenga v. State*, 99 N.E.3d 691, 695 (Ind. Ct. App. 2018) (internal citations and quotation marks omitted). Additionally, Indiana Evidence Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Whitt did not testify at trial, and he played a small role in the investigation. He tested only the substance R.E. bought in the second transaction, not the substances she bought in the first and third transactions.

[14] While the CAR indicates Whitt resigned following revelations about how he analyzed blood alcohol content, the State did not present blood alcohol evidence in Hobby's case. Rather, the State was required to prove the substance Hobby sold R.E. was cocaine. *See* Ind. Code § 35-48-4-1 ("A person who knowingly or intentionally . . . delivers . . . cocaine or a narcotic drug . . . commits dealing in cocaine or a narcotic drug[.]"). Farrell re-tested the substance Whitt originally tested. Farrell determined the substance was cocaine and testified at trial. The Crime Lab's peer review process was only relevant to the extent it shed light on the tests conducted by Crawford and Farrell, and the court allowed Hobby to ask Farrell questions during cross-examination about the Crime Lab's peer review process. The alleged failure of the peer review process to ferret out Whitt's improper blood alcohol testing in other unrelated cases was too remote to be relevant. *See Hicks v. State*, 690 N.E.2d 215, 220 (Ind. 1997) ("proffered evidence may be irrelevant because it is too remote").

Also, Crawford testified during Hobby's offer of proof that the instrument used to determine blood alcohol content was different from the instrument used to identify illicit substances and that the staff kept the instruments in separate parts of the Crime Lab. Therefore, it would have been unfairly prejudicial to the State if Hobby had asked questions implying Whitt did not follow proper procedure in testing the suspected cocaine because Whitt did not follow proper procedure in performing blood alcohol content tests. *See Newland v. State*, 126 N.E.3d 928, 932 (Ind. Ct. App. 2019) (holding court did not abuse its discretion by not allowing defendant to cross-examine witness regarding the facts and circumstances surrounding witness's prior theft convictions).

# Conclusion

The trial court did not abuse its discretion in limiting Hobby's questions about Whitt and the CAR because such questions were not relevant to whether Hobby sold cocaine to a confidential informant and would have unfairly prejudiced the State. Therefore, we affirm.

Affirmed.

Robb, J., and Vaidik, J., concur.